IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Charles Edwin Shelley, | ) | C/A NO. 3:11-3477-CMC |
| | ) | |
| | ) | **OPINION and ORDER** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| County of Kershaw, Jim Matthews, in his | ) | |
| Capacity as Sheriff of the Kershaw County | ) | |
| Sheriff's Office, Steve McCaskill, in his | ) | |
| Capacity as Sheriff of Kershaw County, | ) | |
| Oddie Tribble, Kershaw County Sheriff's | ) | |
| Office, and Certain Unnamed Officers and | ) | |
| Employees of Kershaw County, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

On December 21, 2010, Plaintiff brought suit in this court against Defendants, alleging constitutional violations under 42 U.S.C. § 1983 and various state law causes of action.

Defendant Oddie Tribble is in default. This matter is before the court on the motion for summary judgment filed by Defendants County of Kershaw; Jim Matthews, in his Capacity as Sheriff of the Kershaw County Sheriff's Office; Steve McCaskill, in his Capacity as Sheriff of Kershaw County; and the Kershaw County Sheriff's Office ("Defendants"). Plaintiff has responded in opposition, Defendants have replied, and this matter is ripe for resolution. For the reasons set forth below, the court grants Defendants' motion for summary judgment.

1

I. AMENDED COMPLAINT

Plaintiff's amended complaint is "far from a model of clarity, rendering enigmatic an identification of 'the specific [ ] right allegedly infringed by the challenged [conduct].'" *Taylor v. Waters*, 81 F.3d 429, 433 (4th Cir. 1996) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).[1] Plaintiff asserts five causes of action: negligence and/or gross negligence in the use of excessive force and/or bystander liability under 42 U.S.C. § 1983 (First Cause of Action);[2] assault and battery (Second Cause of Action);[3] negligent supervision (Third Cause of Action) (against County of Kershaw and the Kershaw County Sheriff's Office); intentional infliction of emotional distress/outrage (Fourth Cause of Action);[4] and "Violation of Plaintiff's Civil Rights Pursuant to 42

---

[1]The court has done its best to correctly ascertain the correct causes of action and against whom these causes are asserted. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

[2]This cause of action is brought against "All Defendants," and indicates that Plaintiff seeks relief based upon Defendants' "negligent conduct, and/or omissions, and/or lack of due care" by "beating and/or by not intervening to stop the beating of Mr. Shelly by Sergeant Tribble . . . all in violation of 42 U.S.C. § 1983 et seq." Amd. Compl. at 5 (ECF No. 16). A cause of action under § 1983 does not lie for negligent conduct by jail authorities. *See, e.g.*, *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (holding that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property."); *Davidson v. Cannon*, 474 U.S. 344 (1986) (merely negligent failure to protect inmate from attack by other prisoners is not actionable as a deprivation of liberty without due process under the Fourteenth Amendment). Accordingly, to the extent the First Cause of Action is brought under 42 U.S.C. § 1983, it appears to be coextensive with Plaintiff's Fifth Cause of Action. To the extent it is a state law claim of negligence/gross negligence, it is considered separately.

[3]Plaintiff's Second Cause of Action is brought against "All Defendants." However, the allegations in this cause of action speak only to the actions of Defendant Tribble, although the damages assertion indicates that due to "Defendants' assault and battery on Mr. Shelley," Plaintiff suffered actual and consequential damages. Amd. Compl. at 6.

[4]Plaintiff's Fourth Cause of Action is brought against "All Defendants." Amd. Compl. at 7. Plaintiff alleges that "[a]ll Defendants knew that their actions or lack thereof . . . were certain or substantially certain to result in severe physical pain and emotional distress to Mr. Shelley." *Id*.

2

U.S.C. § 1983" (Fifth Cause of Action). Plaintiff's Fifth Cause of Action contends "All Defendants willfully deprived Mr. Shelley of his rights secured and protected by the Constitution and laws of the United States; that is the right . . . to be free from the use of excessive force amounting to punishment by a police officer." Amd. Compl. at 9. It appears that portions of Plaintiff's First and Fifth Causes of Action overlap to the extent they are both claims asserted under 42 U.S.C. § 1983 for use of excessive force in violation of the Constitution.

II. FACTS

Considered in the light most favorable to Plaintiff, the facts are as follows. On the evening of August 5, 2010, Plaintiff was arrested by Kershaw County Sheriff's deputies at a highway safety checkpoint for various traffic infractions and an outstanding Family Court bench warrant. At the time of the incident, Defendant Oddie Tribble (Tribble) was a deputy sheriff employed by the Sheriff of Kershaw County. On the evening in question, Tribble and another deputy sheriff were tasked with transporting individuals arrested at the checkpoint to the Kershaw County Detention Center (KCDC). The KCDC is a detention facility operated by the County of Kershaw and is *not* under the direction, control and supervision of the Kershaw County Sheriff.

After being placed in the transport van, Plaintiff became agitated because the officers refused to retrieve his asthma inhaler from his car. During the ride to the KCDC, Plaintiff and Tribble engaged in a heated verbal exchange.

The van arrived at the KCDC at approximately 8:30 p.m. Upon its arrival, Detention Center Officer Angie Threatt, who was working in the intake area of KCDC, pushed a button which opened the gate to allow the Sheriff's Department van to proceed into the sally port area, and then closed the gate after the van had entered. Tribble and the other deputy sheriff exited the van and secured

their firearms in a lockbox prior to removing the prisoners from the van. Tribble then opened the door of the van and began to unload detainees. He first assisted a woman, Maria Padilla, from the van. Plaintiff was the next individual to alight from the van. Before Plaintiff stepped off of the van, Tribble extended his metal asp baton and, almost immediately after Plaintiff stepped down into the sally port, began striking Plaintiff on the legs. At all times during the assault, Plaintiff was handcuffed with his hands behind his back. Tribble struck Plaintiff approximately twenty-seven (27) times, the first twenty-three (23) blows occurring in approximately thirty (30) seconds. The entire beating lasted approximately a minute and a half. Tribble's assault resulted in several injuries to Plaintiff, including a fracture to Plaintiff's right leg.

Upon closing the gate after the van pulled into the sally port, Threatt briefly turned her attention to other duties. When she turned back to the sally port, she observed Tribble hitting Plaintiff with the baton. Threatt immediately radioed her supervisor, Sergeant James Robinson, who came to the intake control room. Threatt and Jonathan Harris, a corrections officer also working in the intake area that evening, told Robinson of the events. Robinson looked out the intake window and observed Tribble strike Shelley one time while Shelley lay on the ground outside the intake door. As Shelley lay prostrate at the intake door with Tribble standing over him, still wielding his baton, Robinson opened the main intake door and told Tribble that Shelley would not be accepted into the Detention Center without medical clearance from the local hospital. Robinson stood addressing Tribble, with the intake door open, for approximately 40 seconds. *See* ECF No. 72-17 (videotape of incident).

Plaintiff was assisted to his feet by Tribble, who then roughly shoved Plaintiff against the hood of the van while other arrestees were unloaded. After unloading the remaining arrestees, Shelley was loaded back onto the van, and was taken to the hospital for treatment.

The entire incident was recorded by two stationary video recording devices located in the sally port. As a result of this incident, both Tribble and the other deputy sheriff were fired.

On November 2, 2010, Defendant Tribble was indicted by a federal grand jury for use of excessive force against Plaintiff while acting under color of state law, a violation of 18 U.S.C. § 242. On February 3, 2011, a jury found Tribble guilty of this offense. On May 16, 2011, Tribble was sentenced to sixty-three (63) months' imprisonment in the United States Bureau of Prisons. He is currently serving this sentence, with a projected release date in 2016.

III. SUMMARY JUDGMENT STANDARD

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Rule 56(c)(1) provides as follows:

(1)     A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A)     citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials; or

(b)     showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

A party "cannot create a genuine [dispute] through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

IV. DISCUSSION

*A. Jim Matthews, in his Official Capacity as Sheriff of Kershaw County*

Plaintiff names as a defendant Jim Matthews, "in his Capacity as Sheriff of Kershaw County Sheriff's Office." Matthews was not Sheriff of Kershaw County until 2011, well after this incident. Plaintiff provides no evidence or argument to counter Defendant's summary judgment motion on this point. Accordingly, Defendant Jim Matthews' motion for summary judgment is granted and he is dismissed from this action with prejudice.[5]

---

[5] Defendant has moved for sanctions pursuant to Rule 11 on Matthews' inclusion in Plaintiff's amended complaint. *See* Mem. in Support of M. for Summ. J. at 8 (ECF No. 72-1). However, pursuant to Federal Rule of Civil Procedure 11(c)(2), "[a] motion for sanctions must be made separately from any other motion . . . ." This Defendant has not done.

6

*B. Steve McCaskill, in his Capacity as Sheriff of Kershaw County*

Defendant Steve McCaskill is sued "in his Capacity as Sheriff of Kershaw County." As to Plaintiff's constitutional claims, in his official capacity as Sheriff of Kershaw County, McCaskill was an "arm of the state." *See Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996); *Gulledge v. Smart*, 691 F. Supp. 947, 954 (D.S.C. 1988), *aff'd*, 878 F.2d 379 (4th Cir. 1989); *Cone v. Nettles*, 417 S.E.2d 523, 524-25 (S.C. 1992). Therefore, to the extent sued in his "official capacity," Defendant McCaskill is immune from suit because he is treated as an "arm[ ] of the State." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989).

As to Plaintiff's state law claims, for the reasons set forth by Defendants in their discussion of Plaintiff's state law claims, with which this court agrees and adopts, these claims fail as a matter of law. Accordingly, Defendant McCaskill is dismissed from this action with prejudice.[6]

C. *Kershaw County Sheriff's Office*

In the amended complaint, Defendant Kershaw County Sheriff's Office (KCSO) is identified as "a duly constituted law enforcement agency providing law enforcement services in Kershaw County South Carolina . . . ." Amd. Compl. at 2. In the Answer to the Amended Complaint, Defendants assert that Defendant KCSO is not a proper party; rather, that the proper defendant is the

---

[6]Plaintiff acknowledges McCaskill is not sued in his individual capacity. *See* Resp. to M. for Summ. J. at 6 (ECF no. 84). Accordingly, no claim under § 1983 for supervisory liability has been properly asserted against Defendant McCaskill in this court. *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987) ("[W]hen supervisory liability is imposed, it is imposed against the supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates."). Plaintiff presents argument that McCaskill was present at the hospital when Shelley was taken for treatment and that McCaskill interfered with Plaintiff's medical treatment. However, no "individual capacity" claims are brought against McCaskill in the amended complaint, and an eleventh hour attempt to link McCaskill to specific, individual conduct fails.

7

Sheriff of Kershaw County. Ans. to Amd. Compl. at 1 (ECF No. 24). Plaintiff has not moved to correct this deficiency.

Defendant KCSO is also subject to dismissal as "a federal court lacks jurisdiction to hear a cause of action against a South Carolina Sheriff's Department, as such a suit is barred by [the] state['s Eleventh Amendment] immunity." *Stewart v. Beaufort County*, 481 F. Supp. 2d 483, 492 (D.S.C. 2007). Accordingly, the KCSO is dismissed from this suit without prejudice.

*C. "Certain Unnamed Officers and Employees of Kershaw County"*

Plaintiff names Defendants "Certain Unnamed Officers and Employees of Kershaw County." A plaintiff may name "John Doe" as a defendant when the identity of a defendant is unknown. However, a district court is not required "to wait indefinitely" for a plaintiff to provide a defendant's true identity to the court. *Glaros v. Perse*, 628 F.2d 679, 685 (1st Cir. 1980). Plaintiff has had sufficient time to identify all the defendants in this action yet has failed to specifically serve or identify any John Doe defendants. Therefore, Defendants "Certain Unnamed Officers and Employees of Kershaw County" are dismissed from this action without prejudice.

*D. County of Kershaw*

*1. Constitutional Claims*

Defendant County of Kershaw (County) is named in all five causes of action. As to Plaintiff's constitutional claims, it appears Plaintiff seeks to hold Defendant County liable based on two theories: (1) bystander liability, *see* Amd. Compl. at 5 ("Defendants breached their duty of care by beating *and/or not intervening* to stop the beating . . . while Mr. Shelley was restrained and in handcuffs, all in violation of 42 U.S.C. § 1983 et seq.") (emphasis added); and (2) an unconstitutional "nonintervention" policy at the Detention Center. As to the second theory, the

Amended Complaint contains no allegations regarding the purported unconstitutionality of Detention Center policies. *See id.* However, both parties have addressed at length this "policy" and the non-actions thereunder of certain detention center officers.

### A. Bystander Liability

In *Randall v. Prince George's County, Md.*, 302 F.3d 188 (4th Cir. 2002), the Fourth Circuit adopted a test for the evaluation of failure to act claims under § 1983. "[A]n officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id*. 302 F.3d at 204. "The number of officers present and able to intervene to save an innocent person from unconstitutional summary punishment inflicted by a fellow officer, in no way correlates with any one officer's duty to intercede. Each police officer present has an independent duty to act." *Yang v. Hardin*, 37 F.3d 282, 286 (7th Cir. 1994).

Even assuming, for purposes of this motion, that the individual detention center officers could be deemed liable under this theory,[7] under no scenario can the County be responsible under a theory of bystander liability, as such would involve an imposition of liability based upon the municipality's employment of a tortfeasor. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691 (1978). Accordingly, liability cannot attach to the County based on a theory of bystander liability.

---

[7]Plaintiff did not sue the individual detention center officers who were present and witnessed Tribble's beating of Plaintiff.

9

### B. *Municipal Liability*

In *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978), the Supreme Court interpreted § 1983 to permit a municipality to be held liable for constitutional deprivations resulting from its employees' conduct. However, a municipality cannot be held liable simply for employing a tortfeasor. *Id*. at 691. On the other hand, a municipality may be subject to liability under section 1983 if the alleged injury was caused by an identifiable municipal policy or custom. *Board of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). A government policy or custom need not have received formal approval through the municipality's official decisionmaking channels to subject the municipality to liability. Rather, when an alleged constitutional deprivation is caused by the official actions of those individuals "whose edicts or acts may fairly be said to represent official policy," the government as an entity is responsible under section 1983. *Monell*, 436 U.S. at 694. Because section 1983 was not designed to impose municipal liability under the doctrine of *respondeat superior*, the "official policy" requirement was "intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). Accordingly, Plaintiff is required to adequately plead and prove the existence of an official policy or custom that was fairly attributable to the County of Kershaw and that proximately caused the deprivation of his rights. *See Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999); *Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994).

An official policy often refers to "formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over

time," *Pembaur*, 475 U.S. at 480, and must be contrasted with "episodic exercises of discretion in the operational details of government." *Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987). Additionally, the governmental unit may create an official policy by making a single decision regarding a course of action in response to particular circumstances. *Pembaur*, 475 U.S. at 481. These principles are limited, however, because municipal liability attaches only when the decision maker is the municipality's governing body, a municipal agency, or an official possessing final authority to create official policy. *Pembaur*, 475 U.S. at 481; *Spell*, 824 F.2d at 1387.

Proof of a single incident of the unconstitutional activity charged is not sufficient to prove the existence of a municipal custom. *Spell*, 824 F.2d at 1387-88. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion).

To prevail against Kershaw County under 42 U.S.C. § 1983 for violation of his constitutional rights, Plaintiff must therefore establish that "[t]he action that is alleged to be unconstitutional [must] implement[ ] or execute[ ] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the local government's] officers." *Monell*, 436 U.S. at 690. Municipal liability may attach when the "execution of the government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994) (quoting *Monell*, 436 U.S. at 694).

As noted by the Fourth Circuit,

> A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate

11

> indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). In this regard, "[t]here are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with 'deliberate indifference' to its known or obvious consequences." *Moyle v. Anderson*, 571 F.3d 814, 817-18 (8th Cir. 2009). As a municipality cannot be held liable for simply employing a tortfeasor, "[t]here need not be a finding that municipal employee is liable in his or her individual capacity before municipal liability can attach." *Id*. at 818.

As argued by the parties, the policy at issue is the Detention Center's policy of non-intervention: that detention center officers may not exit the intake area of the detention center and intervene in an altercation between a deputy sheriff and a detainee. There is no written policy submitted by the parties. However, the parties do not dispute that the Detention Center (as operated by the County) has such a policy.

Assuming the Director of the Detention Center is, for purposes of issues relating to this policy only, the County's "governing body, [ ] municipal agency, or [ ] official possessing final authority to create official policy," *Pembaur*, 475 U.S. at 481, no argument is presented, nor can it be reasonably shown, that this policy is facially unconstitutional. Accordingly, Plaintiff must show that the "municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Riddick v. School Bd. of City of Portsmouth*, 238 F.3d 518, 524 (4th Cir. 2000). *See also Jones v. Wellham*, 104 F.3d 620, 627 (4th Cir. 1997) (finding that "only decisions taken with deliberate indifference to the potential

consequences of known risks suffices to impose municipal liability on the basis that such decisions constituted official County 'policy.'"); *Moyle,* 571 F.3d at 818 (municipality liability attaches when "decision to maintain the policy was made with deliberate indifference to its known or obvious consequences."). Deliberate indifference is an objective standard; a municipality is liable if it has maintained "a policy in which the inadequacy is so obvious, and the inadequacy is so likely to result in the violation of constitutional rights" that the policymakers can be said to have been deliberately indifferent. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

Plaintiff has offered no evidence that the County "had notice of an alleged inadequacy in [its] policy or that the policy's alleged inadequacy was so patently obvious that the county should have known that a constitutional violation was inevitable." *Moyle*, 571 F.3d at 819. There is a total absence of evidence of any prior incidences of any unconstitutional use of force between sheriff's deputies and arrestees in the Kershaw County Detention Center sally port which would have resulted in notice to the County, *prior to this incident*, that a policy of non-interference would result in constitutional violations.

Accordingly, Defendant County of Kershaw is entitled to summary judgment, and Plaintiff's federal claims are dismissed with prejudice.

*2. County of Kershaw – State Law Claims*

Plaintiff asserts claims against the County for negligence/gross negligence; assault and battery; negligent supervision; and intentional infliction of emotional distress/outrage. For the reasons discussed by Defendants in support of summary judgment, with which the court agrees and adopts, Defendant County of Kershaw is entitled to summary judgment and is dismissed with prejudice.

V. CONCLUSION

The motion for summary judgment filed on behalf of County of Kershaw; Jim Matthews, in his Capacity as Sheriff of the Kershaw County Sheriff's Office; Steve McCaskill, in his Capacity as Sheriff of Kershaw County; and the Kershaw County Sheriff's Office is **granted**. Defendant County of Kershaw and Jim Matthews, in his capacity as Sheriff of the Kershaw County Sheriff's Office, and Steve McCaskill, in his Capacity as Sheriff of Kershaw County, are dismissed from this action with prejudice. Defendants Kershaw County Sheriff's Office and Certain Unnamed Officers and Employees of Kershaw County are dismissed without prejudice.

**IT IS SO ORDERED**.

s/ Cameron McGowan Currie
CAMERON McGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
July 22, 2013